**LUJAN AGUIGUI & PEREZ** LLP
Attorneys at Law
DNA Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064/5
Facsimile (671) 477-5297



**FILED**
**DISTRICT COURT OF GUAM**

MAY 1 4 2008 ℅

**JEANNE G. QUINATA**
**Clerk of Court**

*Attorneys for Defendant Lau Kam Kueng*

# IN THE UNITED STATES DISTRICT COURT

## TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>LAU KAM KUENG<br>a.k.a. KAM KUENG LAU<br>a.k.a. DAVY LAM,<br><br>Defendants. | CRIMINAL CASE NO. 94-00007-002<br><br>DEFENDANT LAU KAM KUENG'S RESPONSE TO DRAFT PRESENTENCE REPORT AND MOTION FOR DOWNWARD DEPARTURE; EXHIBIT "A"; CERTIFICATE OF SERVICE |

Defendant, LAU KAM KUENG, by and through counsel, David J. Lujan, respectfully makes the following objections and additions to the draft Presentence Investigative Report submitted on May 1, 2008. We respectfully request that the exhibits attached hereto be made a part of the final Presentence Investigative Report.

## I.      OBJECTIONS

1.      **Part A-The Offense, Offense Conduct Provisions**

         a.      Paragraph 17, page 6, Confinement Credit

ORIGINAL

Mr. Lau respectfully notes that in addition to the approximately 237 days of confinement credit from October 3, 2007 to May 27, 2007, he also was incarcerated for eight (8) days in 1994 prior to his change of plea and release. Mr. Lau requests credit for the 8 days served in1994.

b.    **Paragraphs 18-24, pages 6-7**.

Mr. Lau respectfully objects to paragraphs 18-24 of the Presentence Investigative Report (PSR) pertaining to the offense conduct. Mr. Lau maintains his stipulation to the facts contained in paragraph 5.c. of the Plea Agreement, which formed the factual basis for his admissions and ultimately his guilty pleas. However, beyond such stipulated facts, Mr. Lau objects to the PSR paragraphs purporting to establish the offense conduct for purposes of aggravating or enhancing any sentence that might be imposed.[1]

c.    **Paragraph 27, page 7, and Paragraph 45, page 10, Adjustment for Role in Offense**

Mr. Lau respectfully objects to the application of an Aggravating Role enhancement under United States Sentencing Guidelines (U.S.S.G.) § 3B1.1(c) and the corresponding two level increase as a purported "organizer, leader, manager, or supervisor". Application Note 4 to U.S.S.G. § 3B1.1 contains factors the court should consider, which include "exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." As applied to the present case, these factors fail to support an Aggravating Role enhancement.

---

[1]    The Sixth Amendment is violated by the imposition of an enhanced sentence under the United States Sentencing Guidelines based on the sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant. United States v. Booker, 543 U.S. 220 (2005)

The proper test in determining the propriety of an "organizer, leader, manager or supervisor" enhancement is "whether the defendant 'exercised some control over others involved in commission of the offense [or was] responsible for organizing others for the purpose of carrying out the crime.'" U.S. v. Lopez-Sandoval, 146 F.3d 712, 717 (9th Cir. 1998); U.S. v. Ramos-Oseguera, 120 F.3d 1028 (9th Cir. 1997) (holding that without a showing that the defendant, who acted as an interpreter/translator, had control over others, even a defendant with an important role in an offense cannot be deemed a manager."); U.S. v. Avila, 95 F.3d 887 (9th Cir. 1996) (holding that despite the fact the defendant was the sole go-between for the buyer and seller of cocaine, that he negotiated a personal fee of $1,000.00 for each kilogram of cocaine and that he was the deliverer and transporter of drugs, reversal of four-level enhancement was appropriate given the lack of evidence that defendant exercised control or organizational authority over others.); U.S. v. Hoac, 990 F.2d 1099 (9th Cir. 1993) (holding that a defendant who organized importation of heroin by opening trading company, reserving shipping date, arranging for shipping container, assisting another in loading and possessing rental contracting keys for packing warehouse was not the same as organizing other conspirators and therefore cannot be found an organizer, leader, manager or supervisor unless he controlled or organized others.).

In the present case, no proof exists that Mr. Lau, who at most was a go-between, exercised control over other conspirators or was responsible for organizing them for the purpose of carrying out the crime. In fact, Mr. Lau had no control over the other conspirators such to direct, organize, lead, manage, and/or supervise their activities.

Second, no allegation based on an aggravating role was made by the Government in the Indictment filed on January 26, 1994. In that same Indictment (to which Mr. Lau pled guilty the very next day on January 27, 1994), no mention was made that Mr. Lau assumed a role as an organizer, leader, manager or supervisor in the description of acts under Object of Conspiracy

(January 26, 1994 Indictment, page 2), Ways and Means of Conspiracy (January 26, 1994 Indictment, page 3) and Overt Acts (January 26, 1994 Indictment, pages 3-5).

Third, no allegation concerning an aggravating role was included in the Plea Agreement. A review of the facts to which Mr. Lau and the Government stipulated in paragraph 5(c) of the Plea Agreement reveals no specific facts establishing an aggravating role.

Lastly, at no time has Mr. Lau admitted or agreed to an aggravating role. Nor has there been any independent finding of such beyond a reasonable doubt by either a judge or a jury.

Consequently, Mr. Lau requests no increases based on adjustment for aggravated role in offense.

### i.     Requested Adjustment for Minor Role, U.S.S.G. § 3B1.2(b)

Mr. Lau submits that he should receive a two-level reduction based on "minor participant." Application Note 3 to § 3B1.2 (1994) states:

> For purposes of 3B1.2(b), a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal.

In determining whether any adjustment for role in the offense applies, the court must conduct a fact-based inquiry of the particular case. § 3B1.2 (1994) (Background: "…The determination whether to apply subsection (a) or (b), or an intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case.")

The facts show that Mr. Lau was less culpable among the conspirators and as such played a minor role in the present case. The primary participant in the present case was Co-defendant Herman Cruz. Even in relation to Co-Defendant Quin Wu, Mr. Lau played a less substantial role. Co-Defendant Cruz was responsible for initiating and orchestrating the case. Co-Defendant

Wu provided $45,000.00 as opposed to the $17,000.00 attributable to Mr. Lau. In comparison to both co-defendants, Mr. Lau was clearly less culpable.

Importantly, Co-Defendant Wu received a sentence of time served (141 days) and 24 months of supervised release.

Given Mr. Lau's minor role, lesser culpability, and lack of control of others, we respectfully request a two-level decrease for minor role adjustment.

d. **Paragraphs 28, 40, 46 , Obstruction of Justice**

Mr. Lau respectfully objects to the application of U.S.S.G. § 3C1.1, Obstructing or Impeding the Administration of Justice (1994 Guidelines Manual), and the corresponding two level increase. Other than the reason that Mr. Lau left the United States and failed to appear at sentencing, no other justification for this enhancement is made in the draft PSR.

U.S.S.G § 3C1.1, Obstructing or Impeding the Administration of Justice (1994 Guidelines Manual), states as follows:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense levels by 2 levels.

Application Note 3 in the Commentary to U.S.S.G. § 3C1.1 (1994 Guidelines Manual) contains a non-exhaustive list of examples of conduct to which the section applies. The draft PSR is silent as to which example might be applicable or might form the basis of the enhancement. However, we note that included in the list of examples is "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered for a judicial proceeding."

The applicable mens rea element of "*willfully*" as used in U.S.S.G. § 3C1.1 (1994

Guidelines Manual) "requires that the defendant consciously act with the *purpose* of obstructing justice."

U.S. v. Draper, 996 F.2d 982, 984 (1993) (citations omitted); U.S. v. Modello, 927 F.2d 1463,

1466 (1991) (citing U.S. v. Stroud, 893 F.2d 504, 507 (emphasis in original) (footnote omitted)).

The court must "review the evidence and make independent findings necessary to establish a willful

impediment to or obstruction of justice, or an attempt to do the same" to apply an enhancement under

3C1.1. U.S. v. Dunnigan, 507 U.S. 87, 95, 113 S.Ct. 1111 (1993)

Consequently, the District Court is required to review evidence and to make independent

findings that the defendant *consciously acted with the purpose of obstructing or impeding justice.*

Other than the fact that Mr. Lau left Saipan and lived in Hong Kong until recently returned to

Guam, to which we stipulate, the only evidence before the court upon which to base a finding of

Mr. Lau's state of mind consists of Mr. Lau's allocution in the draft PSR.

In Mr. Lau's allocution contained in paragraphs 29-30 of the draft PSR, he explained that

he left Saipan because of threats against his family and his life and resulting fear for safety. Mr.

Lau's son, Andrew On Chun Lau, independently verifies the threats received in Saipan in his

letter of support attached in **Exhibit "A"**. The fear Mr. Lau felt was reasonable given the fact

that he received death threats and that he believed the people behind such threats had the ability

to carry them out whether he was in jail or in the community.

Mr. Lau's plea agreement with the Government required his continued cooperation. The

continued cooperation placed Mr. Lau in danger after he was released from custody and returned

to Saipan. Mr. Lau did not flee because he was merely "afraid of going to jail for his crime" as

stated in paragraph 30 in the draft PSR. Rather, Mr. Lau feared for his safety whether he was in

or out of jail as he reasonably believed that the people with whom he dealt at the time of the

offense herein had the power to find and silence him as needed. Under the circumstances then existing, Mr. Lau reasonably believed that his departure from Saipan essentially was the lesser of two evils.

Further, Mr. Lau has not been charged with an additional offense stemming from his departure from Saipan. The offenses of conviction are the only matters before this court.

Lastly, applying a U.S.S.G. § 3C1.1 enhancement effectively eliminates the potential for an adjustment under § 3E1.1, Acceptance of Responsibility. We strongly object to the devaluation of Mr. Lau's acceptance of responsibility by the application of a purported obstruction of justice enhancement.

We respectfully submit that Mr. Lau's fear for his family and his life does not rise to the level of willfulness contemplated by U.S.S.G. § 3C1.1.

e. **Paragraph 30, page 8, and Paragraph 57, page 11**

To the extent that paragraphs 30 and 57 attribute Mr. Lau's departure from Saipan only to being "afraid of going to jail for his crime" or "[t]he prospect of imprisonment also scared him into the decision," we respectfully object as being incomplete and misleading. As recognized in the paragraphs 30 and 57 of the draft PSR, Mr. Lau feared for the lives and safety of his family and himself after receiving death threats.

f. **Paragraph 31, page 8, Acceptance of Responsibility**

Mr. Lau respectfully objects to the lack of an adjustment for acceptance of responsibility. Pursuant to U.S.S.G. § 3E1.1(a), Acceptance of Responsibility (1994 Guidelines Manual), a two-level decrease is appropriate if a defendant "clearly demonstrates acceptance of responsibility."

Application Note 1 in the Commentary to U.S.S.G. 3E1.1 (1994 Guidelines Manual) provides a list of considerations in determining whether a defendant qualifies for an adjustment

for acceptance of responsibility. That list is as follows:

*Application Notes:*

1.     *In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:*

(a)     *truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;*

(b)     *voluntary termination or withdrawal from criminal conduct or associations;*

(c)     *voluntary payment of restitution prior to adjudication of guilt;*

(d)     *voluntary surrender to authorities promptly after commission of the offense;*

(e)     *voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;*

(f)     *voluntary resignation from the office or position held during the commission of the offense;*

(g)     *post-offense rehabilitative efforts (e.g., counseling or drug treatment); and*

(h)     *the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.*

A review of the above considerations clearly establishes Mr. Lau's eligibility for an adjustment based on acceptance of responsibility. First, the timeliness of Mr. Lau's guilty pleas clearly demonstrates his acceptance of responsibility. A total of eight days elapsed from the date of the Complaint filed January 19, 1994 to the date of Mr. Lau's guilty pleas on January 27, 1994. The period is even shorter when one examines the date of Indictment in relation to the date of Mr. Lau's guilty pleas. Specifically, Mr. Lau was charged by Indictment on January 26,

1994. In a most prompt and diligent fashion, he pled guilty pursuant to a plea agreement with the Government the very next day, January 27, 1994. The speediness of Mr. Lau's voluntary guilty pleas points to the timeliness and clear demonstration of his acceptance of responsibility.

Second, Mr. Lau clearly demonstrated his acceptance of responsibility by truthfully admitting his wrongdoing and ultimately stipulating in his plea agreement with the Government to the facts establishing the offenses of conviction. Mr. Lau did not require the Government to engage in lengthy, time-consuming and costly discovery. Nor did Mr. Lau put the Government to task by proving his guilt at a trial.[2]

Although Mr. Lau recognizes that an adjustment for acceptance of responsibility is not a matter of right, Application Note 3 to the Commentary of U.S.S.G. § 3E1.1 (1994) recognizes that "[e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under 1B1.3 (Relevant Conduct) (see Application Note 1(a)), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a)."

---

[2] The exclusion under U.S.S.G. § 3E1.1, Application Note 2 (1994) is inapplicable because Mr. Lau did not go to trial. U.S.S.G. § 3E1.1, Application Note 2 (1994) states:

*2. This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.*

Based on the foregoing, we respectfully submit that a two-level downward adjustment for acceptance of responsibility should be applied to Mr. Lau's sentencing.

g.     **Calculation based on Requested Changes – Group I**

The following calculations are based on the 1994 Federal Sentencing Guidelines Manual provisions.

<u>**Count I**</u>

| | |
|---|---|
| Paragraph 36., Base Offense Level | 10 |
| Paragraph 37., Specific Offense Characteristic | +3 |
| Paragraph 38., Victim-Related Adjustment | 0 |
| Paragraph 39., Adjustment for Role in Offense | 0 |
| **Requested Adjustment for Minor Role** | - 2 |
| Paragraph 40., Adjustment for Obstruction of Justice | 0 |
| Adjusted Offense Level (Subtotal) | 11 |

<u>**Count II**</u>

| | |
|---|---|
| Paragraph 42.,   Base offense level | 9 |
| Paragraph 43.,   Specific Offense Characteristic | + 2 |
| Paragraph 44., Victim-Related Adjustment | 0 |
| Paragraph 45., Adjustment for Role in Offense | 0 |
| **Requested Adjustment for Minor Role** | - 2 |
| Paragraph 46., Adjustment for Obstruction of Justice | 0 |
| Paragraph 47., Adjusted Offense Level (subtotal): | 9 |
| Paragraph 48., Highest Adjusted Offense Level: | 11 |
| Paragraph 49., Adjustment for Acceptance of Responsibility: | - 2 |
| Paragraph 50., Total Offense Level: | 9 |

2.      **Part C – Defendant's Characteristics**

     a.      **Paragraph 59, page 11**

Mr. Lau notes that his 9 year old, Chun Cheung Lau, is a boy and therefore his son, not daughter.

     b.      **Paragraphs 66 and 67, pages 12-13**

Mr. Lau notes that his business is Best Choice Shoes Enterprise, not Best Chinese Shoes Enterprise.

3.      **Part D – Sentencing Options**

     a.      **Paragraphs 72 and 79, page 14, Guideline Provisions**

Mr. Lau repeats his objection to a Total Offense Level of 15. Based on an adjusted Total Offense Level of 9 and a Criminal History Category of I, the guideline range of imprisonment is 4-10 months and the fine amount is $1,000.00 to $10,000 pursuant to U.S.S.G. § 5E1.2(c)(3) (1994).

     b.      **Paragraphs 69, 78, 79 and 80, pages 14-15, Fines**

Although the draft PSR contains financial information, it is important to note that these figures are estimates based on Mr. Lau's best recollection prior to his incarceration in October 2007. Due to his incarceration, his business has suffered and Mr. Lau believes that his accounts have been depleted and his business earnings are substantially lower.

Consequently, Mr. Lau respectfully objects to the imposition of fines and respectfully requests a waiver of such. Mr. Lau submits that he will be unable to pay an additional fine even with the use of a reasonable installment schedule and will not likely become able to pay all or part of a fine. We respectfully submit that the imposition of a fine does little to further the

punitive objectives of sentencing that will not be or have not been already fulfilled by a term of imprisonment.

Lastly, Paragraphs 12 and 13 of the draft PSR notably fails to include fine amounts for Mr. Lau's Co-Defendants.

## II.    RELEVANT FACTS

In United States v. Booker, 543 U.S. 220, 258-260,125 S. Ct. 738, 764-765 (2005), the Supreme Court severed and excised the provisions of the Federal Sentencing Act that made the sentencing guidelines mandatory (18 U.S.C. § 3553(b)(1)) and that set forth the standard of review on appeal (18 U.S.C. § 3742(e)). As modified, the Guidelines effectively became advisory. 543 U.S. at 222, 245, 125 S.Ct. at 743, 757. Thus, while the Court is required to consider Guideline ranges pursuant to 18 U.S.C. § 3553(a)(4), the Court is permitted "to tailor the sentence in light of other statutory concerns as well, see [18 U.S.C.] § 3553(a)[.]" 543 U.S. at 222, 245-246; 125 S.Ct. at 743, 757.

By its terms, 18 U.S.C. § 3553(a) expressly calls for the tailoring of a sentence in light of other statutory concerns. 18 U.S.C. § 3553(a) states:

> (a) Factors To Be Considered in Imposing a Sentence.
> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)    the need for the sentence imposed --
>
>        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>        (B)    to afford adequate deterrence to criminal conduct;

| (C) | to protect the public from further crimes of the defendant; and |

| (D) | to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; |

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for --

| (A) | the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[; and] |

| (B) | in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission [and in effect at the time of sentencing;] |

(5)    any pertinent policy statement [issued by the Sentencing Commission and in effect at the time of sentencing];

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to pay victims of the offense.

18 U.S.C. § 3553(a).

Pursuant to 18 U.S.C. § 3553(a), the Court is mandated to "impose a sentence *sufficient*,

but *not greater than necessary*, to comply" with the four traditional "purposes" of punishment.

18 U.S.C. § 3553(a). Specifically, 18 U.S.C. § 3553(a) mandates that the sentence this Court

imposes shall be sufficient, but not greater than necessary, to achieve the purposes set forth in 18

U.S.C. § 3553(a)(2) of retribution, both specific deterrence relating to the defendant and general

deterrence relating to others, incapacitation, and rehabilitation.

Additionally, pursuant to 18 U.S.C. § 3661, "[n]o limitation shall be placed on the

information concerning the background, character, and conduct of a person convicted of an

offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Upon consideration of 18 U.S.C. § 3553, we respectfully submit that the following factors are relevant to the Court's consideration in fashioning a sentencing that is sufficient but not greater than necessary to accomplish the objectives of retribution, deterrence, incapacitation and rehabilitation.

## 1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

Mr. Lau continues to stipulate to the facts contained in the Plea Agreement relating to the nature and circumstances of the offenses to which he pled guilty. Mr. Lau further submits that his involvement in the present case was as a minor participant.

The best statements of Mr. Lau's character and history are contained in the letters of support that are attached hereto as **Exhibit "A"**. Mr. Lau is a mild-mannered 56 year old businessman, who was born and raised in Hong Kong. He is married and his family resides in Hong Kong where they try to keep Mr. Lau's shoe business afloat in his absence. Mr. Lau has three sons: two are adults (from his first marriage) and the youngest is 9 years old, residing in Hong Kong with Mr. Lau's second wife. From all indications, Mr. Lau maintains strong and supportive ties with both his first wife and their sons and with his second wife, their son and the extended family. In fact, he is a central figure in his families as the letter of support attest.

Mr. Lau's business, Best Chinese Shoes Enterprise, is the only source of income for his immediate and extended family. Prior to his arrest in October 2007, Mr. Lau was the sole supporter of his immediate family consisting of his wife and young son. His wife stayed at home to look after their son. Since Mr. Lau's incarceration in October 2007, Mrs. Lau has had to work

in Mr. Lau's business to keep it running. According to Mrs. Lau's letter, not only has the business suffered due to her lack of business experience and poor English, but more importantly, their young son has suffered personally and academically. The whole family, too, has suffered as the family is supported by Mr. Lau's business

Mr. Lau has no history of convictions for any other offenses. Prior to the present matter, he led a law-abiding life. While in China over the last 14 years, Mr. Lau has remained arrest and conviction free, opting instead to work hard at business and to provide for his family.

## 2.    The Need for the Sentence Imposed to Accomplish the Four Traditional Purposes of Punishment of Retribution, Deterrence, Incapacitation and Rehabilitation

Indisputably, the traditional goals of sentencing have been achieved through pre-sentencing incarceration. As of October 3, 2007 to the date of sentencing, Mr. Lau would have spent nearly eight (8) months in incarceration. During the last eight months, Mr. Lau has been separated from the family he dearly loves. Particularly since February 26 2008 when Mr. Lau returned to Guam, Mr. Lau has had limited contact with his family by phone and letters.

Because of Mr. Lau's slight stature and status as a "foreigner," he has been the target of physical violence and taunting while incarcerated at the Agana Detention Facility. In March 2008, Mr. Lau was punched in the chest and head-butted in the face by another inmate. Mr. Lau did not formally complain for fear of retaliation and causing the Facility to go on lock-down, which he believed would have resulted in further acts of violence or taunting. Unfortunately, his failure to report the incident only made him more of a target. Since that time, Mr. Lau has been in fear for his safety.

We respectfully submit that the goals of retribution, deterrence, incapacitation and rehabilitation have been achieved and further incarceration is unnecessary.

### 3. Remaining Factors under 18 U.S.C. § 3553

Mr. Lau defers to the Court's discretion and consideration of the remaining factors under 18 U.S.C. § 3553.

## III. FACTORS WARRANTING DEPARTURE BASED ON EXTRAORDINARY FAMILY CIRCUMSTANCES

Mr. Lau recognizes that under the sentencing guidelines, a defendant's family ties and responsibilities are "not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6. However, the Court retains authority to depart in cases where "there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." U.S.S.G. § 5K2.0.

> An offender characteristic or other circumstance that is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range may be relevant to this determination if such characteristic or circumstance is present to an unusual degree and distinguished the case from the "heartland cases" covered by the guidelines in a way that is important to the statutory purposes of sentencing.

U.S.S.G. § 5K2.0.

The Ninth Circuit upheld a four-level downward departure based on extraordinary family circumstances in U.S. v. Aguirre, 214 F.3d 1122, 1127 (9th Cir. 2000) "based on the fact that there is an 8 year old son who's lost a father and would be losing a mother for a substantial period of time." More recently, in U.S. v. Leon, 341 F.3d 928 (9th Cir. 2003), the Ninth Circuit

also upheld a six level departure which allowed the sentencing of defendant to home detention due to the defendant's wife's medical circumstances.

The established case law clearly authorizes this Court to depart below the guideline in the present case if it finds the existence of extraordinary family circumstances. Perhaps the case which most parallels the defendant's case is the Galante case from the Second Circuit.

In U.S. v. Galante, 111F.3d 1029 (2d Cir. 1997), a post-Koon case, a departure from offense Level 23 to offense Level 10 based on exceptional family circumstances was upheld. In granting the departure, the District Court considered that the fact that the defendant was 41 years old, married, a first time offender, the primary source of financial support for his family which included two children, ages 8 and 9, and had a wife who had limited earning capacity because she spoke little English. The District Court imposed a sentence of time served (8-day detention prior to being released on bail) to prevent disintegration of family unit and financial hardship to dependents.

Similarly, Mr. Lau and his business is the sole support for his family. He is a first time offender, married with a young child and the primary source of financial support for his immediate and extended families. Although his wife has had to now work, she does not have the earning capacity, business knowledge and skills and English abilities as Mr. Lau. As the letters in support of Mr. Lau attest, his family and business are suffering due to his absence. A term of incarceration would destroy the family unit. As Mrs. Lau observes in her letter of support, "[w]hen a tree falls, all monkeys spread."

More importantly, Mr. Lau's young son is suffering personally and academically. In his letter of support, he writes "[m]ly father has not been with us for months, I can not concentrate on my school work and my school result is getting worse now, especially English. I can see my mother working

harder and harder now, but she does not have time to be with me." And in the innocent way that children believe all things are possible if they are good, he pleads: "Uncles and Aunts, would you please give a chance for my father to be release and to be with us again as soon as possible. I promise I will be a good boy and obey parents and teachers." His promise to do the only thing he can offer captures the essence of how much he suffers and what he would do to have his beloved father back.

## IV.    CONCLUSION

Based on the foregoing, Mr. Lau respectfully requests that the Court sentence him to time already served and allowing him to voluntarily and permanently leave Guam.

Dated this ___14th___ day of May, 2008.

LUJAN AGUIGUI & PEREZ LLP

By:_____
DAVID J. LUJAN, ESQ.
*Attorneys for Defendant Lau Kam Kueng*

L-0050/897-00/LVL:

Your honor,

I, Zhu Yong Hong, wife of Lau Kam Keung, hereby writing to beg your honor to grant the shortest sentence to my husband under whatever the U.S. laws are allowed.

I stayed on Saipan since 1990 with my husband and we ran IT & T phone booth, video rental and fashion retail in our shop located in Chamoro Place in Garapan. I went back to China after my husband came back from the Guam after the court released him.

My husband is a very good man, he loves his family and his sons, he likes to help his surroundings by every of his efforts. He is a liable and good business man too. He started his wholesale shop of shoes in GuangZhou years ago. The business is just on track, however, after he was arrested, the nightmare has been ruining both of our family and his business. I am the housewife taking care of our boy who is 9 years old now. Because of his absence, I have no alternative but to handle his business, and I need my 70-year-old mother to take care of the boy at home. I feel sad as I find that it is hard to handle both the feeling of family members and run business at the same time. My husband, Davy Lau, could make it when he was at home. I miss him. I face a lot of difficulties in communicating with the foreign customers as my English is poor. Therefore, the customers do not trust me as I have no experience in shoes designs. The factories are not cooperating with me and the staffs are not obeying my orders. In these four months, we lost customers and some staff as they do not trust me. One of our customers did not pay us and one of the staff stole some of our goods. Therefore, we owe factories money and they do not want to follow and produce our orders. Therefore, I really scare his business will be ruined by me if he cannot come back and take up the business himself in a short period. The finance of the family is also supported by the business, if it comes bad, the whole family will be in big problem. In our Chinese words, "When a tree falls, all monkeys spread."

Our son who is 9 years old now. He hides and cries every time he thinks of his beloved father. He keeps asking me when his father can come back to play with him and teach him English. I almost cry when he asks me about that as I do not know the answer, I cannot lie to him either. His schooling result is getting worse and his behavior changed, he fought with his classmate last week because of his bad emotion. Both of our family and his ex-wife's family are longing for his returning. In fact, he is the soul of both families.

I hope your honor can consider the difficulties that we are facing without his presence. Please kindly give the shortest sentence to him enabling our lives can be brighten again in an early day.

Yours truly,

Zhu Yong Hong
January 20, 2008

香港居民身份證
HONG KONG IDENTITY CARD

朱 永 紅
ZHU, Yong Hong

2612 3057 4767

出生日期 Date of Birth
18-04-1967    女 F
CX
簽發日期 Date of Issue
(08-04)

11-08-04    R297027(8)

Your honor,

I, Zhu Yong Hong, wife of Lau Kam Keung, hereby writing to beg your honor to grant the shortest sentence to my husband under whatever the U.S. laws are allowed.

I stayed on Saipan since 1990 with my husband and we ran IT & T phone booth, video rental and fashion retail in our shop located in Chamoro Place in Garapan. I went back to China after my husband came back from the Guam after the court released him.

My husband is a very good man, he loves his family and his sons, he likes to help his surroundings by every of his efforts. He is a liable and good business man too. He started his wholesale shop of shoes in GuangZhou years ago. The business is just on track, however, after he was arrested, the nightmare has been ruining both of our family and his business. I am the housewife taking care of our boy who is 9 years old now. Because of his absence, I have no alternative but to handle his business, and I need my 70-year-old mother to take care of the boy at home. I feel sad as I find that it is hard to handle both the feeling of family members and run business at the same time. My husband, Davy Lau, could make it when he was at home. I miss him. I face a lot of difficulties in communicating with the foreign customers as my English is poor. Therefore, the customers do not trust me as I have no experience in shoes designs. The factories are not cooperating with me and the staffs are not obeying my orders. In these four months, we lost customers and some staff as they do not trust me. One of our customers did not pay us and one of the staff stole some of our goods. Therefore, we owe factories money and they do not want to follow and produce our orders. Therefore, I really scare his business will be ruined by me if he cannot come back and take up the business himself in a short period. The finance of the family is also supported by the business, if it comes bad, the whole family will be in big problem. In our Chinese words, "When a tree falls, all monkeys spread."

Our son who is 9 years old now. He hides and cries every time he thinks of his beloved father. He keeps asking me when his father can come back to play with him and teach him English. I almost cry when he asks me about that as I do not know the answer, I cannot lie to him either. His schooling result is getting worse and his behavior changed, he fought with his classmate last week because of his bad emotion. Both of our family and his ex-wife's family are longing for his returning. In fact, he is the soul of both families.

LAP0004

I hope your honor can consider the difficulties that we are facing without his presence. Please kindly give the shortest sentence to him enabling our lives can be brighten again in an early day.

Yours truly,

Zhu Yong Hong
January 20, 2008

香港居民身份證
HONG KONG IDENTITY CARD

朱 永 紅
ZHU, Yong Hong

2612 3057 4767

出生日期 Date of Birth
18-04-1967    女 F
CX

簽發日期 Date of Issue
(08-04)



11-08-04    R297027(8)

Your Honor,

My name is Lau, On Chun, Andrew, Hong Kong ID Number, K324964(6). I am Lau, Kam Keung, Davy's son. I am going to show the importance of my dearest father. He is a reliable, responsible, and respectful father.

He is Reliable and Responsible.

I remember when I was about six, we moved from a big flat to a small apartment. The former one was three times bigger than the new one. Two years later, we moved again from the small apartment to a much smaller one. I did not know why we moved a lot. I just remember that we lived together in a 150-square-feet apartment for six years but we were very happy and close. My father always spared time to fish and play football with my younger brother and me. He worked hard and sometimes worked overnight but he still checked our school assignments after work. He taught me how to study. He shared his experience in fishing with us too.

I also remember that my reliable father, Davy Lau, always changed jobs in order to give us better standard of living. In 1986, He went to China to seek for new opportunity. He found it but he fell in love with another woman, Miss Zhu, Yong Hong. I hated both of them then. However, he did not forget his family in Hong Kong. He kept looking after his family in Hong Kong too. No one is perfect, although he was wrong, but he tried to fix the mistakes he had made. When I asked my mother why we moved a lot when I was young, she said that my father sold the house in order to help his friend. She added that my father was a good person and always thinking of his friends. I asked if she hated my father for what he had done in China, she said she would not hate him and they would be friends forever. As I can see now, my father does not forget to take care of my mother's need. When she felt sick, my father worried about her. When my father is in the detention center in Hong Kong these days, she visits him every week.

I have another fact to prove my father's reliability. In 1990, he went to Saipan with the woman and started their new life there. He did not forget his family in Hong Kong. He asked me go with him in 1992 and I started my studies in Saipan. He wanted me to substitute his role in Hong Kong and so he let me study there. He paid for my school fees there, even when he did not have enough money to pay my school fees, it was USD1, 200 for a semester. He emptied the piggy bank at home and counted the coins one by one in order to have the school fees ready for me! During those days, his business was not good. He was so reliable to his family. In fact, He could send me back to HK at that time, but he wouldn't! He let me decide what to study and he supported me to study social work. However, in 1994, the nightmare came! He was caught by FBI. He wanted to protect us so he arranged his wife and me to go back to China and Hong Kong. He had been suffering from the threatening after going back to Saipan from the detention centre in Guam. I saw his face was pale and hands were shaking one morning. I did not know then what was happening to him as he was so kind that he did not want to scare me. He liked solving problem himself and did not need any help. One thing I can say is that he has been protecting his family from anything bad and he cared a lot of their feelings all the time.

He is reliable to his family in Hong Kong and China. He is reliable to his friends too.

He is Respectful.

When I had conflict with his wife, he was the negotiator to comfort both sides and I did not see his anger ever. Between 1992 and 1994, he kept contacting my mother in HK to see if she needed help. He solved part of her financial problems. He is still thinking how to solve the rest of her problems. He took care of both families in Saipan and in HK. He also invited his father-in-law, his wife's father, to live with us in Saipan. In fact, his health was not really good in China after his retirement. My father wanted to look after the old man. See my father was nice to all men.

Although he is a businessman, he is considerate. He designs and trades men's leather shoes. He thinks not only the marketing, but the comfort of the shoes. He wants everyone who wears his brands feels relaxation without paying a lot. He created cheap but comfortable shoes with high quality leather. If I were a businessman, I would have sold women's shoes as all they need is fashion. I could have earned much more than my father. But he insists to make good quality shoes; he wants students wear cheaper but comfortable shoes to go to schools as well. When I was young, I wore cheap but low quality shoes as we were poor. He has the plans, but he can not make it happen at present because he will be put into jail.

He is in the detention center in Hong Kong now. As I know he always helps others there to write letters to beg for better offers. He offers his help to others, and he takes care of others' needs while he is suffering from an unknown future. He misses his families. He cries before me. He knows that he had done wrong but he is still a 100% reliable, responsible, and respectful father ever.

Your honor, although he did something against the law 14 years ago, he just wanted to help others. He is a businessman and he always wants to bring happiness to his family. He is considerate of his customers too. He is the core of the family in China. They need him. All I can do is to take care of the family in Hong Kong now but I am not capable of taking care of his family in China. Because I am not as powerful as Lau, Kam Keung, my reliable, responsible, and respectful father. I beg you to have mercy to my father's fault and pass lenient sentence towards him.

Your consideration is highly appreciated.

Yours truly,

Lau, On Chun Andrew
5th January, 2008



TO YOUR MEJESTY,

DEAR SIR, I'M THE DAUGHTER-IN LAW OF DAVY LAU KAM KEUNG. I WOULD LIKE TO WRITE SOMETHING FOR HIM. ALTHOUGH I'VE KNOWN HIM FOR JUST ABOUT THREE YEARS, AS I KNOW HE IS AN HONEST MAN THAT HE ALWAYS KEEP HIS PROMISE.

I'M A CHRISTIAN. THE BIBLE TEACHES US THAT WE'VE TO LOVE OUR PARENTS. MY HUSBAND LOVES HIS DAD AND I LOVE HIM TOO. I DON'T WANT A MAN TO SUFFER A LOT IN SUCH AGE.

HE IS A KIND MAN THAT HE ALWAYS LIKES TO HELP OTHERS. ALMOST THREE YEARS AGO, HE DID HELP MY HUSBAND IN OUR WEDDING. HE HELPED MY HUSBAND TO PAY FOR THE BANQUET, BUT HIS BUSINESS WAS NOT RUNNING WELL AT THAT PERIOD. HE STILL KEPT HIS WORD AND HELPED MY HUSBAND, HIS ELDER SON, ANDREW LAU.

HE THINKS MUCH ABOUT HIS FAMILY. HE STILL HAS TO EARN MONEY FOR HIS NINE YEARS OLD SON AND HIS WIFE IN CHINA.

WE ALL LOVE HIM AND HOPE YOUR MEJESTY KINDLY PASS LENIENT SENTENCE TOWARDS MY DEAR FATHER-IN-LAW.

THANKS FOR READING.

YOURS SINCERELY,

MS. REGINA LAU LEE YUEN NGA.
JANUARY 22, 2008



Your honor,

My name is Lau on kit, Andy, HKID number K841239(1). I am Lau Kam Keung, Davy's second son.

The bottom of my heart, my father is always a kind hearted man. He loves everyone in his family. He shows his affection to the one who he knows. He tries his best to help his friends every time they need help.

My father is an optimistic person. He makes everyone surrounding him feels happy and comfortable. Although my father is a busy businessman, he also cares and considers another one and their feelings. All his family members, friends and his clients are missing him very much.

Your honor, my father is not young of age now, please kindly consider his age and his importance in our family. We long for having him at home with us again every second. I super need my father to preside over my wedding ceremony.

Thank you very much for reading this letter and I beseech monsignor gives my father a lenient sentence.

Yours truly,

Lau On Kit, Andy
22nd of January, 2008

刘镇嶂

各位法官、叔叔、亚姨（阿姨），你（您）们好！我是刘镇嶂的儿子，我是刘镇嶂，今年9岁半了，爸爸妈妈告诉我讲爸爸在以前做错事，触犯了法律。现在要去接受法律制裁。我知道后很好伤心。因为从我懂事起，爸爸爸都很疼我，妈妈平时爸爸对朋友都很热情及好助人为乐。

之前爸爸每天都好努力工作，有时还做得很晚才回来休息。但爸爸无论多累，都是每周都会抽空出时间和我去图书馆，玩游戏，教我做模型。因爸爸英语水平高，经常和我英文会话，让我妈妈就每天费能（省）不上课辅导我语文、数学等。妈妈我在班上经常受老师表扬，但我现在爸妈妈不是太懂英文，所以不会教我英文。

每天都会做很好吃饭菜给我们吃。连爸爸的朋友都说妈妈做菜有大宾馆的水准。但自从爸爸无办法回来之后，妈妈开始去爸爸的公接手爸爸以前的工作。妈妈现在每天只带我上课然后不能再接我放学辅导我的功课，亦没时间去市场卖（买）菜做饭给我吃，在公司由早返到很晚回家，亦没有人带我去图书馆看图书找书，玩游戏及反教我做模型。由于这几个月没有人辅导我，我的成绩比以前差了很多。今次中段考试语文得C、数学得B

英文📦手工B哎！如果爸爸我看见妈妈每天都爸累 文（我好好好好好读书+）
果爸爸能早些回来．回复以前一切就好了！📦📦嗨

  各位叔叔、阿姨．希望你们能给我爸爸一个改过自新
的机会．让他早点回家．我一定要努力读好书．做一个孝
顺父母的．老师讲的好孩子！

                          刘镇峰
                      于2008年3月1日

Case 1:94-cr-00007    Document 77    Filed 05/14/2008    Page 32 of 39
LAP00016



香港永久性居民身份證
HONG KONG PERMANENT IDENTITY CARD

劉 鎮 標
LAU, Chun Cheung

049↑ 6966 1534

出生日期 Date of Birth
11-01-1999    男 M

AX

簽發日期 Date of Issue
(02-06)
14-02-06    R424090(B)

R424090(0)

LAP00017

Your honor,

My name is Ho Yun May, Amy. I am Lau Kam Keung, Davy's ex-wife.

I have known Mr. Lau since we were teenagers. For almost forty years, I am sure that Lau is always a good man. He is a traditional Chinese man. He likes to help people even it means he will end up suffering even though his friends did not appreciate his help. Luckily, he met his best friend Mr. Wong. Davy loves his parents. Although they passed away for almost thirty years, he always remember them and perform son's duty to go to their graves to clean them. He is a dutiful son in the light of Chinese tradition. He insisted to live with his parents and did not let them go to the nursery home. He hired private nurses to take care of his parents at home. I knew it made him work harder and harder to earn for the expenses and he never said anything but kept making his beloved parents living happily at home. He taught his sons to study although he was busy.

We divorced fifteen years ago. We married when we were young and we decided to apart as we knew that our relationship would be much better if we became friends. Although we are not couples, he still helps me. He supported our younger son, Lau On Kit, Andy, to study art and design courses and he keeps giving me support as I have financial problems. Every year, he went to Hong Kong to have gathering with us. In Chinese culture, every family has gathering every Chinese New Year. The sixth of February is Chinese New Year and there would be a ray of hope to have gathering with my old friend, my ex-husband, Davy Lau, this year. If this came true, I would be very delighted. Your honor, could you give our family a chance to have gathering from next year onwards?

I totally collapsed when I heard that he was caught on October 3. He misses his family, especially his youngest son who is only nine years old. All we want is his presence every year in our gathering. Your honor, I beg you to give my best friend, Davy Lau, a lenient sentence.

Your kind attention is highly appreciated.

Yours truly,

Ho Yun May, Amy
January 18,2008



香港永久性居民身份證
HONG KONG PERMANENT IDENTITY CARD

HO , Yun May Amy
何 翔鏃

0149 3387 5633

出生日期 Date of Birth
27-08-1963
******A12
簽發日期 Date of Issue
(日期相同) Date of Issue

01-03-05

女 F

E52046(2)

Your Honor,

I, Ko Zhu, mother-in-law of Lau Kam Keung, I am ~~72~~ 67 years old in age.

I am proud to have him as my son-in-law, he loves my daughter and the family very much. He takes care everyone in the whole family even he is busy in business.

I have one daughter and one son, my husband died 7 years ago, he was a retired senior judge from the district court in GuangZhou City. He taught my son, daughter and Lau Kam Keung that they must be a good citizen in the community. We were really astonished and stocked when he was caught on Saipan in 1994, when my husband just returned from there, he was invited to go there by Lau Kam Keung when he was just retired. He really believed that his son-in-law had no intention to commit the case as he understood Lau Kam Keung's character, he knew Lau Kam Keung likes to help friends, so he committed the case because of his character. The case is in front of him now. The length of the sentence to him is very important to our family as he is our main financial support. Without him, we have no happiness at all.

I hope your honor can consider my statement, to give him a short sentence.

Your kindness is highly appreciated.

Yours truly,

Ko Zhu
4th Jan. 2008





Your Honor,

I, Zhu Yong Hua, brother-in-law of Lau Kam Keung. I knew him in 1986 when he firstly visited my parents.

I am working in his warehouse, I am also controlling the quality of shoes for him. He is am intelligence boss and businessman, without his leading, I scare my sister can not manage the business and the company will be closed.

If it happens, I will be un-employed and my wife will also lose her job as she is also working in the same company. Two family will face financial problem seriously.

My relationship with him, Lau Kam Keung, is very good since I know him up to now. He is a very good mannered and tempered person I have ever met. My daughter has good marks in English who is studying secondary form 3 is tutored by him.

Our two families live together when he came back from Saipan and enjoy a very happy family atmosphere all the time.

I, my wife, and my daughter wish and pray he can come back to us very soon, he brings happiness to my mother who is 70 years old now and both families.

67

Yours truly,

Zhu Yong Hua, 朱永祥
4th Jan. 2008

姓　名　朱永华

性　别　男　　民　族　汉

出　生　1968 年 12 月 23 日

住　址　广州市越秀区云台里18号
之一—503房



公民身份号码　440102196812234812